May it please the Court, John Annam appearing on behalf of the UAW. I would like to reserve five minutes for rebuttal. Okay, and maybe, you know, I find this a rather puzzling case. This ban is now out of bankruptcy. Correct. So they could, even if you were to win and the benefits get restored, they could turn around tomorrow, I assume you'd agree, and terminate the benefits immediately. And that puzzles me. And the other thing is the closing agreement. Excuse me. You could have taken an appeal initially but didn't take the appeal, I'm assuming because, and I say you, I'm not sure if you're the counsel for that, but your clients, UAW, could have taken an appeal initially but didn't. And while the appeal was pending, as I read the record, they apparently were in negotiations for this plant closing agreement. I would assume there was a decision made that, because at that point the law looked so unfriendly toward the position of whether or not 1114 had to be invoked, because almost every other court, I think every other court, was going the other way. There was maybe some strategic advantage to rather than taking an appeal that didn't seem very hopeful, negotiating the better terms of a plant closing agreement, which happened. And then all that, I guess, kind of confuses me. But now there is kind of a belated appeal, not of the original order, but of the bankruptcy court, of the district court's reversal of the bankruptcy judge's reading of our order. But even if you win, it just seems to me that my guess is they're going to terminate these benefits anyhow, which they can't do without going to 1114 because they're not in bankruptcy anymore. Am I missing something? I hope I'm missing something. There's a lot there, Judge, and I will address those questions directly. Visteon, in fact, did terminate retiree health care benefits after it emerged from bankruptcy, which is what the plan permitted it to do, subject to the retiree's right to bring in a WRISA lawsuit and challenge it. What Visteon is attempting to do is to use the bankruptcy court's original termination order to argue that the new lawsuit, the WRISA lawsuit, is barred by res judicata. That's what's involved here. So it's not a mood issue. It's not an academic issue in any sense. So I'd like to make three points that can directly address these questions you've raised, and that is that Visteon's request, in essence, that the bankruptcy court's restoration order restoring retiree health care benefits during the bankruptcy, that request, in essence, would nullify the Chapter 11 plan. That's one point. Second point is that the bankruptcy court had a jurisdiction, authority, and discretion to restore retiree health care and to follow Code Section 1114, and this court's ruling in the original Visteon case in 2010. And third, the bankruptcy court, while it got it right in our view on the second time, it wasn't perfect and it needed to expand the restoration order to cover these people that you referred to as the closing agreement, which I will address in this argument. If Visteon had its way, five bad things would happen. It would nullify its Chapter 11 promise to restore benefits during bankruptcy and to honor the Third Circuit's ruling. It would nullify Section 1114 special procedures, which this court enunciated in the Visteon case, and it would deny the bankruptcy court of the jurisdiction authority to reconsider or to reconsider the original termination order. First, now I'd like to go to the plan itself. The plan was entered into following the Third Circuit ruling and following the bankruptcy court's decision to say I'm going to restore benefits for what he calls the UAW retirees, the Visteon retirees from a closed plant in Puerto Rico and a closed plant in Pennsylvania that used to be represented by the UAW. And the judge says I'm going to restore benefits for them. At what point? I'm not sure where you are temporarily. You lost me. The bankruptcy court did that in August of 2010. After our decision? After your decision. Okay. After this court's decision, the UAW filed a motion saying to restore benefits. And they cited this court's decision. They cited the court's authority to reconsider or to do equity in this context. The bankruptcy court agreed in large part. Then what happened is Visteon did its Chapter 11 plan. Visteon did not, after the judge restored benefits, the bankruptcy judge restored benefits, say we're going to follow 1114, let's terminate the benefits properly. They didn't do that. Instead, the Chapter 11 plan was confirmed. It was a day later, though, wasn't it? Yes, it was. It looks like they had a lot of time to think about it, right? I don't know whether they had time. I'm sure they had time to think about it, Judge, because the plan itself incorporates this court's judgment and the bankruptcy restoration order, and it says they will restore benefits pursuant to this court's ruling. They incorporate, they embrace this court's decision in order to have the Chapter 11 plan. And then it does say in there, Visteon has the right, following bankruptcy, to terminate post-bankruptcy subject to the right of the retirees to challenge it. So the whole idea of the plan. Basically, all that was in the bargaining agreement before bankruptcy. It basically puts everything back. Yes. The whole idea of the plan was to punt. Visteon, you restore benefits. They said they restored benefits during bankruptcy. Following bankruptcy, the plan said Visteon reserves its right to terminate post-bankruptcy. We reserve the right to challenge post-bankruptcy, and that's what we did in the ERISA case. So the plan itself nullifies any effort of Visteon to say to this court, let us go back now in time and terminate benefits during the bankruptcy. They can't do it. They couldn't take an appeal from the order of the bankruptcy judge right before the confirmation? They could have taken an appeal, but they then entered a plan. They could have did, didn't they? Yes, they did. And the Chapter 11 plan is the final order, and that is what's binding upon Visteon. They now want to undo the plan. Doesn't our Pilatex case say that you can appeal a pre-confirmation final order? There's an order and then there's a confirmation. I think our Pilatex case says you can appeal that pre-confirmation order. Yes. As a general rule, I would say yes. But in this context, the plan, which was confirmed by the court, says we restore benefits. We follow the Third Circuit's ruling. We follow the restoration order, and we punt. And the only way we can terminate is out of bankruptcy. So they punted on the issue. The plan does that. And so now what they want to do is say nullify the plan promise. That was in the plan itself, and they cannot, we believe, nullify it. You're saying following the Third Circuit's order. But you weren't even in that case. You hadn't filed an appeal. You were no place in this whole picture. So how do you, had it gone the other way and you had not appealed and you had won below, I don't think you'd be arguing for an expansive reading of that Third Circuit order. Well, separate from the plan, assuming the plan didn't incorporate the Third Circuit ruling, and let's assume we just deal with this issue, did the bankruptcy court have the authority to do what it did following this court's decision? Visteon focuses on the fact or the argument that the Third Circuit ruling in this case, in July of 2010, did not require the bankruptcy court to restore benefits. And one can argue whether it was required or whether the bankruptcy judge has the inherent authority under the bankruptcy code to restore, to correct a legally erroneous decision affecting individual rights. That's 1,200 individual retirees, not just the UAW. It's the rights of the retirees that are at stake. Does the court, though, have that inherent authority after the order's final? I can understand before an order's final that you might go back and reconsider and all, but this is a final order that was already on appeal and it just came back. Well, Your Honor, this court has said in Marcus Hook, a 1991 case, that it is well settled that a bankruptcy court has the power to vacate or modify its orders as long as it is equitable to do so. Because of the nature of bankruptcy proceedings, the cases are ongoing. This is not your normal civil case. Bankruptcy cases are ongoing, and they cite a Second Circuit case that made the same point. Given the nature of bankruptcy cases, there's a practical utility in the application of a rule that permits a bankruptcy court to have such authority. And we would contend that gives the bankruptcy court authority on that alone. That's assuming the Third Circuit decision doesn't even mandate what he did. But separate from that, Judge. Okay. Let's go back before that. The IUE appealed the bankruptcy court's order, and the district court affirmed. The IUE then appealed that order to this court, and we reversed, right, and remanded. Correct. But the only one who was before us was the IUE. You weren't even in there. So how can you benefit from that? How can you say now, give me some authority for why you can say now that the bankruptcy court has the authority, after all of that goes on, to reverse its earlier order and issue a new one? What case are you relying on? I'll go back to Section 1114 of the Bankruptcy Code. That is the only provision that can bind individual retirees. It's not designed to protect the UAW or the debtor, individual retirees. Section 1114 says in Section G, even assuming a court modifies or terminates benefits, at any time thereafter, the union or the authorized representative, assuming 1114 was followed, at any time thereafter could ask the court to reconsider or to modify. So the Act of Section 1114G3 itself specifically grants, in the context of bankruptcy, the ability of the union to seek relief. But I would simply point out, and let me just quote the language here, Section G talks about the court entering an order modifying benefits if it finds various conditions were met. Now, understand, 1114 was not applied at all. None of the procedural substantive provisions were applied to the so-called retirees. But then it goes on to say, in Section 3, provided, however, that at any time after an order is entered providing for modification, the authorized representative of the retirees may apply to the court for an order increasing or modifying it. Section 1114 itself even provides the bankruptcy court with jurisdiction to do it, even after it enters an order. So the fact that the Third Circuit entered an order vacating it isn't even necessary because the bankruptcy court, given the unique nature of Section 1114 and these proceedings has the inherent authority and the authority under the Act to do it. I'd also point out, Judge, that there's Rule 60B. A reference was made earlier on. In situations where a judgment is void or for reasons of equity, a court can reconsider orders, even if they're considered final. So you have the bankruptcy court either getting the mandate from this court, which was broad, which vacated a single order. The original termination order was a single order affecting all retirees, and this court makes reference to it in its original decision. So it terminated benefits for all retirees, and this court issued a broad mandate. You can only affect the individual retirees unless you follow 1114. So we believe the bankruptcy court had the authority, indeed the duty, to restore benefits to protect the individual rights of the retirees because that's what this is about. It's about the individual rights of 1,200 people who want to be able to sue Vistian and maintain a lawsuit post-bankruptcy. And Vistian is attempting to use these proceedings to argue that they have no such right because the case has already been decided. Even though he may well lose under arrest. I don't know whether he would or not. I don't know anything about that. You're right, Your Honor. We may lose on the merits or we may win on the merits, but all we want is the ability to maintain that suit, and Vistian is attempting to use this, the bankruptcy court's termination order, to argue collateral estoppel, res judicata, even though the retirees were not properly made parties to that proceeding. The only way the retirees' rights can be affected. That proceeding one. Vistian one? The first one, yes. 1114 is a procedure that requires mandate-specific provisions. So the retirees were not represented, even though the UAW attempted to protect their interests, and even though in hindsight, yes, Judge, it would have been better if the UAW had appealed. But that doesn't matter ultimately because the bankruptcy court has the authority to make sure Section 1114 is complied with, and it has the authority under Section G3 upon request to reconsider it. And that's what he did, whether it was because of Third Circuit's decision, because of UAW petition, and we believe that that was well within his discretion. And what Vistian wants to do is to nullify its planned promise, which incorporates this ruling. It wants to nullify the bankruptcy court's ability to correct a clear, 1,200 individuals of their right. Vistian cannot pick and choose what Section of 1114 they want to apply. They want to say UAW failed to appeal, and therefore it binds the retirees. We were not their authorized representative under the law because Section 1114 wasn't followed, and therefore they're not bound to it. I understand your argument. I think you sort of reserved some time. Yes, I think I probably ate into some of that yesterday. Okay. Thank you. Good afternoon, Your Honors. Chief Judge McKee, may it please the Court, I'm Andrew Bloomer on behalf of Vistian. With me in the courtroom today is Mike. Mr. Bloomer, has anybody ever told you you resemble to some extent Justice Scalia? No. I have a partner named Mark Phillip who really does, who clerked for Justice Scalia. Pardon me, but a partner who? Mark Phillip, Judge Mark Phillip, who has a striking resemblance. Oh, okay. Yeah. Maybe he's in the water in that firm. Have you been in water there? I wasn't baptized in those waters, Your Honor. Okay. But I'd be honored to look like Judge Kaney, who I did clerk for in the Seventh Circuit. Your Honors, this case actually involves a fairly straightforward application of well-settled. Before you get into it, Judge McKee started off, this is all kind of confusing. Yep. I mean, if you prevail, are you going to go after 1,500 people to try to recoup benefits, you know, any benefits you already paid them? Where's this thing going? Your Honor, I think what my client's primary interest in is finality. And we had an order in the bankruptcy court that one union, as Judge Nygaard pointed out, appealed, the UAW, and none of its retirees, and they were creditors and parties in interest. They were not strangers to this proceeding, which is a new argument that got raised on appeal by the UAW. But the reality is, regardless of whether they were represented by the UAW or not, these retirees were creditors, parties in interest, got notice, individual actual notice, of everything that went on. None of them appealed. The union, who, throughout the proceedings, said many, many times it was its authorized representative. And we would submit, Your Honor, would say here today that they're authorized representatives. They're here on their behalf. But be that as it may, whether they represented them or not wouldn't matter for purposes of bankruptcy law because the retirees, as well as their union, were creditors and parties in interest. What my client's primary interest in was finality. So when we take a look, for instance, at the plan of reorganization, my client was ordered to reinstate benefits. It objected to that on exactly the ground that the UAW is not entitled to that relief under res judicata. The judge overruled that, ordered my client to reinstate benefits through the duration of bankruptcy, which it did. How long was that, duration of bankruptcy? The duration was something over the entire – the reinstatement period was from, I think, April through October of 2010 for about a period of six months. We took an appeal from the termination order. The UAW took an appeal. Everyone knew they were appealing. And so when we got to the plan, everyone agreed that they would reserve their arguments, including the arguments that were being made on appeal. There's nothing in the plan that abrogated my client's right to appeal. There's nothing in the plan that abrogated the UAW's right to appeal the portion of the order they lost. What this plan does was to preserve everyone's rights, but including our rights to the enforcement of res judicata. And what the plaintiff's position is really on this appeal is would vitiate that principle. And it comes from the Supreme Court's decision in Bowles v. Russell, 2008, I believe, decision, going all the way back to Torres v. Oakland Scavenger Company, which is 1988, going all the way back to the 50s in cases like Federated Department Stores and Ackerman, where the principle is if a party doesn't appeal, an appellate court lacks jurisdiction to grant it relief. You know, the problem with this – when I initially looked at this case, it was exactly where it was. I thought about it, but it seems to me the problem is it's not that simple, because based upon what I'll call Visteon 1, Visteon didn't have the authority to generate benefits for anyone unless it jumped through the procedural hoops in 1114. If it did not have that legal authority, why does it matter whether or not some party was part of the lawsuit or not? Your argument would say that the fact that the UAW did not take an appeal gives Visteon a right that Congress said it didn't have, and that is the right to terminate the benefits without going through the 1114 procedure. It's a very good question, Chief Judge McKee. I would say it's a different right. After you've asked around these things. I'm very good at it. It's a right to finality. It's not a right to terminate. It's a right to rely on subtle laws of finality and res judicata, or otherwise. Why wouldn't that be final? The final pronouncement is you go through 1114 or you can't terminate benefits. That's the finality. Because the case arose, the context of the case arose, and this happens in civil rights cases, constitutional law cases, and the Supreme Court's made clear even if the decision was erroneous, it doesn't preclude a party from relying on the finality of it against a non-appealing party. The problem with the reliance argument, though, is the reliance argument helps you because you would be relying upon a legal finding that you don't have the legal authority to do something that you then did, and you're relying upon the fact that, well, they're not party to the lawsuit, therefore they can't get the benefit of it. Therefore, my client is closed with an authority that Congress never gave him. That's my problem with the reliance argument. Well, but I think it's broader than that, Your Honor, because when the bankruptcy judge made this decision, he held a two-day trial, considered all the objections. You had discovery. He made findings of fact. He made conclusions of law. What this court did, even as to the IUE's appeal, is to say you got your conclusion of law wrong, and that settled that issue. That happens in any number of cases that involve constitutional claims, claims of due process violation. The Friedman case that we cite here, I think it's a 1963 case from this court, where that occurs. So I don't think I would characterize it as my client being able to rely on something it wasn't allowed to do. It was allowed to rely on what was then a final judgment that could not be collaterally attacked by a party that never appealed, and although they mentioned Rule 60, never moved under Rule 60. And the reason the district court wouldn't have the authority, imagine what would happen, Your Honor, if this court decided an issue. You know, there was a judgment binding 100 parties. One appeals, 99 do not. What case law for 60 years has said is that it's binding as to those 99. There's finality. But the district judge could say I have the inherent authority, notwithstanding that, to grant relief. And our point, Your Honor, is he doesn't have, whether it's a district judge or bankruptcy judge, he has no authority at that point because you have res judicata against those claims. What happens in a situation, and maybe there's not an analogous case, I'm not familiar with it, if there is. Let's say an agency acts in a manner which is later determined to be ultra-priorities. But in its action, let's say there are 1,000 people involved, and in its action only three people of the 1,000 are parties. Those three people appeal something the agency did. The court says what the agency did was beyond its legal authority. It's ultra-priorities. Therefore, the agency action had no legal effect. You're not suggesting that the other people in that 1,000 group could now be subject to the same agency action that the court said was ultra-priorities of the agency's authority. I think by analogy, Your Honor, I think that would be the very, very narrow ground where the court would be saying since it was ultra-virus, it had no authority, it lacked the jurisdiction to issue the decision it did, so therefore it's void. There is case law that says you cannot collaterally attack a judgment, even on the basis of subject matter jurisdiction. And there's no case cited by the union that shows the application of even a judgment determined to be void as to a non-appealing party. If it's void or vacated, it's vacated as to the parties before the court. And I will say, and this is an important point, Your Honors, when you decided Visteon 1 didn't void the district court's decision, you reversed it, and you didn't vacate it. You just simply reversed it. Judge Sanchi, the bankruptcy judge on remand, didn't say, didn't make a determination or say that his order was void or vacated. He says, I'm reinstating the benefits because I believe that the Third Circuit's decision requires me to do so, to which we object to the new rules. He did say void. The bankruptcy judge did say void. He, at the beginning of his musing, when you read the transcript, Judge Chigares, he said, I tend to think, and then there was a whole lengthy argument. And where he got to at the end of that was to say, because that became, if you read past that, that became a series of arguments back and forth among the parties in the court. And at the end of the day, what he said was, I'm not making any findings to that. I'm not deciding that. I'm deciding it applies. And, in fact, that's what his reinstatement order says. It uses the term application. He finds that this court's order in Bistion I should be applied to all the retirees. But I think there is very good case law that would, for the proposition, including in this circuit, that if the, even if the, Moiti settles the issue of whether it's erroneous or not. It really doesn't matter. Even if it were void, it could only be void as to the appealing parties. I haven't found, and I haven't seen a case cited that said it could somehow be void as to a non-appealing party. And the cases that I would raise to this court's attention, because Your Honors decided them, is that follow the Bowles line of cases that says an appellate court lacks jurisdiction to grant relief to a non-appealing party. This court's decision in Ray Taylor applies. That was a bankruptcy sanction order in a bankruptcy context where this court applies Bowles. Also, the Caterbone case is a. I just pulled up. The Caterbone case is. Because you're talking about a mortgage lender situation there. And it's not, again, going to whether or not the lender had the legal authority to do what it did when it acted. That's my concern. I'm sorry. Go ahead. Well, we had the legal authority to do what we did when we acted. But it got, as to the IOE, reversed by this. Everything we raised. And that's one decision. And then the question is, what happens with parties that don't appeal? And the answer is the same thing that happens in every case when a party doesn't appeal. Because if this court did not have the jurisdiction to grant them relief, and there's no Rule 60 motion, there's nothing that the plaintiffs do to protect their interests by way of that kind of post-trial motion, then they face res judicata. And it's, as the Supreme Court has said, it applies even when the results are, frankly, harsh, and even legally and logically inconsistent. I mean, you have cases where you have a non-appealing party and an appealing party. They're much more closely related than the parties here. You have, in the Ackerman case, you have in-laws. In the Repla case, you had a manufacturer and its distributor. In the In re Taylor case, you have a law firm and its lawyers. And yet this court has applied this principle of jurisdiction in the bankruptcy context and in precisely those types of situations. This court has recognized an exception, the Tabor Court exception. The plaintiffs don't raise that. And I think after Bowles, it may be an exception that's probably very limited at this point. I would say that we did look to see if this circuit, this court, or any other circuit had applied the Tabor Court exception. That's where the rights of an appealing party and a non-appealing party are so inextricably entwined that you can only grant relief to the appealing party by simultaneously granting it to the ‑‑ I don't see that as a ‑‑ And they don't make that argument. I don't think it applies. Especially in REM cases, as I think you pointed out. Those are in REM cases, right? Right, right. You had an assigner and an assignee of real property, foreclosed real property in that case. So what your honors are faced with, I think, is the application of fairly subtle rules in the context of bankruptcy, which in Ray Taylor and in Caterbone, this court has applied those precedents. And what I would say, your honors, in closing, is that in order to reverse what Judge Andrew did, and needless to say, we think he got it exactly right, and it was a fairly straightforward application of law, this court would really have to unwind 60 years of precedent at the Supreme Court level and at this court's level. You'd have to overrule the REPLA line of cases and rewrite the law in res judicata. You'd have to kind of disregard the undisputed factual record here, where it's conceded that the union and none of its retirees appealed and never filed any motion under Rule 60, which is applicable under Bankruptcy Rule 9024 in bankruptcy courts. So it'd have to be a disregard of the rules, and it would frankly be, at least in our research of the case law, fairly unprecedented, if not entirely unprecedented. And the implications of it would be that it would undermine finality in judicial proceedings, particularly in bankruptcy proceedings, where the ability to have finality is critical and enhanced. And you'd have a situation where parties could, in a sense, free ride off of appellants who do appeal, wait, see what happens, and then collaterally attack those decisions later on, which would, and I think this case is to some extent a demonstration of it, unfortunately, would result in delays, costs, and inefficiencies, both for the judiciary and the parties as issues are not brought to timely conclusions. Unless your honors have any other questions. There's one question you may not be able to answer, but it occurred to me, I don't know the answer to this, but Visteon could have done the belt and suspenders approach after we went back, and just said, well, okay, we'll go through 114, just to be sure before we terminate UAW folks. And I, maybe you don't know it, maybe it's not that relevant, but I'm assuming, well, one, you don't know the outcome, you might have gone through that procedure and the bankruptcy court may have said, you're not going to terminate them, but it just seems like a sure bet that way. That way, if you get through the 111, the 114 process, and the bankruptcy court agrees that they can be terminated, then you really are. It's a very good question, and the short answer, your honors, and I think I'm not stating anything that isn't on the record of the bankruptcy court, is that Visteon and the UAW tried very hard up until the last minute to settle the matter, and got fairly close, but settlements sometimes, as we know, break down, and in the meantime, they had taken their appeal, we had taken our appeal, we knew this was going up to the district court in Delaware out of this matter, and so there would have, if we had been able to achieve that kind of resolution, then neither I nor my distinguished colleague across the bar, Mr. Adam, would be here before your honors today. Because there's still an opportunity to do that. The defense lady has not yet solved it. Your honor, I think we've been, in defense of my client, I think I can say we've been, we've been, we've tried several times. Thank you. It has always been the bridesmaid. Okay. Thank you, your honors. Thank you. Visteon wants to fit a square peg into a round hole. It talks about well-settled law. This is a bankruptcy case in the context of Section 1114, which guarantees the retirees special protections. They were not followed. The idea that the retirees are therefore bound because the UAW did not take an appeal, we think is without merit. This is an ongoing bankruptcy case in which 1114 is the only way the individual retirees can be bound, not the UAW, and that's what Visteon missed. It equates the UAW with the retirees. Section 1114 is supposed to have a procedure where the UAW could be appointed their authorized representative, and then they must follow the very specific procedures. That was not done. Therefore, the retirees are, in fact, not bound to that, whether the UAW appealed or not. He was saying that you're, Blumer, I'm sorry, was saying that you are, in fact, creditors of the company and got notice of all the proceedings. Well, I believe the retirees got notice of the motion. So Spanish-speaking retirees in Puerto Rico got copies of debtor's motion that seeks to terminate all retiree benefits of everyone, 8,000 or more people cited by this court, and that somehow they were then going to file individual appeals. In fact, Visteon made the point, well, even if the UAW can't bind the retirees, the individual retirees should have filed individual appeals. That is contrary to 1114. It's contrary to what happened in this case. Visteon's desired rule would nullify the purpose of 1114, which is to say the court appoints the union or appoints a committee. That is how the procedure would then follow. They want to say forget that, every retiree for him or herself. So individual retirees would then be filing individual appeals, maybe a 50 appealed or a 100 appealed, only they would get the benefit of it. That specter of every retiree for him or herself is chaos and is why Congress enacted 1114. Visteon then followed. How did you get in on the case of the UAW if you weren't representing these thousands of people? Well, because the UAW attempted to assert Section 1114 and attempted to protect the retirees' rights. But our efforts to do that does not make us the legally authorized representative that we can bind them adversely. That's the key difference. If 1114 is followed, then the union could become the binding authorized agent, or if the bankruptcy court appointed a committee. None of that was done. UAW's efforts failed to stop the bankruptcy court. And once this court issued its decision and it's an ongoing bankruptcy case, the bankruptcy court has the authority to restore benefits. Section 1114, again, I direct the court's attention to Section G3. At any time after even benefits are terminated, the court can restore benefits. And, in fact, in the Visteon case in 2000, this court cited that provision at page 218, which deals with this exact issue. Even after the court permits a modification or, in this case, termination, however, the authorized representative may still move for an increase in benefits, which the court should grant if consistent with 1114G standards. Did any one of your UAW parties in interest file a motion under D that says the court upon motion by a party in interest may appoint? Are you talking about D or G? I'm sorry. D. I'm back to D. That's where you started. I was at G. I'm sorry, Your Honor. I'm behind you. It says upon motion of a party in interest after notice and hearing shall appoint a committee or a retired somebody. You're saying you weren't appointed, but did anybody file a motion that you appointed? I don't understand. I'm missing something here. You're in here arguing on their behalf, but yet you're saying you don't represent them. I don't get it. Well, Your Honor, there's a difference. We can seek to assert their rights. We can try to argue these points, but we can't legally bind them adversely. In other words, we are attempting to assert these rights because the bankruptcy court had no jurisdiction or authority to do what it did. But we're not their authorized representative in the sense that we can legally adversely bind them, and that's the difference. Unions often try to protect the interests of retirees, but we're not their authorized representative that can bind them adversely unless the procedure is followed. And that's the point here. Whether the UAW existed or not, the bankruptcy court has the authority to restore the benefits under Section 1114. At any time thereafter, if it can decide to do so, we believe it can do so under its inherent authority, and we believe it can do so under Rule 60B where the judgment is void or order is void or where reasons of equity require it. This court in this decision said the bankruptcy court had no authority to terminate retiree health care without following 1114. Therefore, the retirees cannot be adversely bound by it. Now, going back a little bit farther, I'm still troubled by the finality thing. If, for example, this is a wild hypothetical. Listen carefully. Take notes, in fact. If, for example, everybody had sort of prevailed partway, you lost half your benefits, and that was the order being appealed by the UAW or by the IUE, and you were content to get half because you might get nothing, so you didn't appeal. So the court wipes it all out, you go back, and then you lose everything. Where would you be in that one? You're arguing just the opposite, that the court didn't have authority to wipe out the 50% that you got. Your Honor, if 1114 was followed and the union was appointed their authorized representative and all the procedural and substantive procedures were followed, then the union's action in failing to appeal could bind the retirees. The problem here is Section 1114 wasn't followed. Therefore, the retirees are really strangers to the proceeding. It doesn't matter they got a copy of the motion. 1114 is a prerequisite. It's a procedural and substantive requirement that was not followed. Okay. I think that would be your argument. Yeah. Okay. Thank both of you for a very excellent argument. Very well done. Very well done. Thank you, Madam, for your advisement.